IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUSAN ROBINSON,<br><br>                Plaintiff,<br><br>vs.<br><br>SUNROC CORPORATION and CLYDE COMPANIES, INC.,<br><br>                Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:08-CV-437 TC |

      Plaintiff Susan Robinson alleges that her former employer, Sunroc Corporation, and its parent Clyde Companies (together "Sunroc"), violated Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act (FMLA), and the Equal Pay Act. Specifically, Ms. Robinson alleges that Sunroc discriminated against her based on her gender, did not respond adequately to her complaints of discrimination by a coworker and others, retaliated against her after she complained about the discrimination, failed to advise her of her rights under the FMLA, and paid her less than it paid male employees for the same work.

      Arguably the most egregious harassment Ms. Robinson suffered was at the hands of a welder named German Paladini. Mr. Paladini worked on a job site with Ms. Robinson, but was not employed by Sunroc. Mr. Paladini asked Ms. Robinson to date and have sex with him, physically cornered her on the job site, jumped uninvited into her truck, and slipped a disturbing love note in her pocket. As a result of Mr. Paladini's harassment, Sunroc transferred Ms.

Robinson to a different job site and complained to Mr. Paladini's employer.

According to Sunroc, its response to Mr. Paladini's harassment was by law reasonable–shielding it from Title VII liability for any hostile work environment created by Mr. Paladini. Sunroc also claims that the other grounds for Ms. Robinson's Title VII sexual discrimination claim, and her other causes of action, fail as a matter of law. For the reasons set forth below, the court agrees, and grants Sunroc's motion for summary judgment.

**BACKGROUND**

Ms. Robinson alleges or does not dispute the following facts:

**Employment at H.E. Davis/Sunroc**

Ms. Robinson began working as a laborer at H.E. Davis (which later merged with Sunroc[1]) on May 9, 2005. In mid-December 2005, when work slowed down for the winter, Ms. Robinson's employment was terminated; but two months later, when warm weather arrived and work increased, Ms. Robinson was rehired by Sunroc.

At Sunroc, Ms. Robinson performed the same basic laborer duties she had performed at H.E. Davis, but she also started learning to operate new equipment. In April 2006, Sunroc raised Ms. Robinson's pay from $10/hour to $11.50/hour, and in July 2006, Sunroc raised Ms. Robinson's pay again, from $11.50/hour to $12/hour. Sunroc terminated Ms. Robinson's employment in mid-December 2006.

**Harassment at Various Job Sites**

As a Sunroc employee, Ms. Robinson worked at job sites where Sunroc was one of multiple subcontractors working at the site. In the spring of 2006, six workers at various job

---

[1] Sunroc provides construction services and related products.

sites where Ms. Robinson worked requested her phone number or made comments to her about "going out," "hooking up," or having sex. Most of those workers stopped bothering her after she told them that she did not want to go out with them. All but one were employees of other subcontractors.

In about the third week of April 2006, Ms. Robinson went to her supervisors and told them "this is nuts" and asked them to do something. One Sunroc supervisor told another employee to tell the workers to leave Ms. Robinson alone. Ms. Robinson does not recall being bothered by most of these workers after mid-April 2006.

**Harassment by German Paladini**

Beginning around April 17, 2006, a welder named German Paladini, an employee of a different subcontractor working on the construction site where Ms. Robinson was working, began making lewd jokes, using crude language, repeatedly asking Ms. Robinson to date and have sex with him and physically cornering her. Ms. Robinson complained to her supervisor about this behavior (but did not mention Mr. Paladini by name) around April 19, 2006. Her supervisor said he would check into it. Ms. Robinson cannot recall any specific instances of Mr. Paladini bothering her between April 19, 2006, and April 27, 2006.

Around April 27, 2006, after Mr. Paladini jumped into Ms. Robinson's truck uninvited, Ms. Robinson again complained to a supervisor, this time saying that Mr. Paladini was "psycho" and would not leave her alone. Ms. Robinson's supervisor, in what he describes as an attempt to make her feel good, told her that if she weren't so pretty, men wouldn't ask her out. He also told her to hang in there and he would try to do something.

Later in April 2006, Mr. Paladini put a note in Ms. Robinson's pocket that said: "If

seeing you was meaning of life, and not seeing you was meaning of dyeing [sic], I prefer to die and see you than to live and not have you . . . ." (Mem. Opp'n Mot. Summ. J. ¶ 48.) That was the last time Ms. Robinson had any interaction with Mr. Paladini. Ms. Robinson requested a transfer, and Sunroc supervisor Randy Diamond immediately reassigned Ms. Robinson to another job site away from Mr. Paladini. Sunroc also complained to Mr. Paladini's employer, who suspended Mr. Paladini. The afternoon she was transferred, Sunroc's Safety Director told Ms. Robinson to contact him if she had any more problems with Mr. Paladini. After her transfer on May 1, 2006, the sexual harassment Ms. Robinson had been experiencing stopped.

### No Bathrooms on New Job Site

There were no bathrooms on the new work site. Because there were several subcontractors working on lots surrounding the Sunroc job, there were many bathrooms within walking distance. And, with the understanding that the job would be completed in one month, Sunroc supervisor Stan Davis decided, before Ms. Robinson's transfer, not to put any bathrooms on the Sunroc site. When Ms. Robinson asked for permission to leave the site to use the restroom, she did not experience any problems.

### Steel-Drum Roller at New Job Site

While on the new job site, Ms. Robinson was given a steel-drum roller (made for rolling asphalt) instead of a rubber-wheeled roller (made for rolling dirt). Because the steel-drum roller was not the appropriate tool for the dirt she was rolling, using the roller hurt her back.

### Hospitalization/Leave

Ms. Robinson worked at the new site for six or seven days and then developed a kidney infection for which she was hospitalized. She was out on leave from May 9, 2006, to May 23,

2006. She was ultimately paid for the time she spent on leave by worker's compensation insurance.

### December 2006 Employment Termination

In December 2006 (one year after her last winter layoff), Sunroc terminated Ms. Robinson's employment. Sunroc did not terminate the employment of a male employee named Shawn Shepherd. Blake Bradford, the Sunroc supervisor who terminated Ms. Robinson's employment but decided not to terminate Mr. Shepherd's employment, knew that Mr. Shepherd had more experience laying pipe than Ms. Robinson, and that Mr. Shepherd was already laying pipe on an ongoing project.

### Settlement Offer

As part of a confidential EEOC mediation in February 2007, Sunroc offered a settlement proposal to Ms. Robinson. One of the proposed terms of the settlement was that Ms. Robinson agree to give up any claim to current or future employment at Sunroc. Ms. Robinson did not accept Sunroc's proposal.

### Offer of Re-Employment

In March 2007, Ms. Robinson was offered re-employment with the same job she had in December 2006 (including the same duties, hours, and pay). Ms. Robinson did not accept Sunroc's March 2007 job offer.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

### TITLE VII SEXUAL DISCRIMINATION CLAIM

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Ms. Robinson alleges that she was discriminated against because of her sex in violation of Title VII when Sunroc terminated her employment in December 2006; when, for six or seven days, Sunroc did not provide an onsite bathroom after Ms. Robinson's transfer; and when Sunroc did not respond adequately to the harassment suffered by Ms. Robinson during the spring of 2006.

#### Discriminatory Discharge

The court applies the McDonnell Douglas three-part burden-shifting analysis to Ms. Robinson's sexual discrimination claim alleging discriminatory discharge. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ms. Robinson claims to have met her prima facie burden by providing evidence that (a) she belongs to a protected class; (b) she was qualified to perform her job; (c) despite her qualifications, she was discharged; and (d) the job was not eliminated after her discharge. (See Mem. Opp'n Mot. Summ. J. at 36-37.) See also Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999). However, the only evidence that Ms.

6

Robinson provides to show that her job was not eliminated after her discharge is that, about a month before her discharge, a manager said that Sunroc would have winter work, and that soon after her discharge, Sunroc ran an ad in the Salt Lake Tribune and in the Deseret News advertising the same job as the one from which Ms. Robinson was let go.

Assuming that Ms. Robinson has set forth a prima facie case, the burden of production shifts to Sunroc to articulate a legitimate, nondiscriminatory reason for the termination of Ms. Robinson's employment. See Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). According to Sunroc, the winter work did not materialize, the ads were placed in advance, and Mr. Shepherd, who had more pipe-laying experience than Ms. Robinson, was already working on an ongoing pipe-laying project. Because Sunroc has met its burden of production, summary judgment is warranted unless Ms. Robinson can show that there is a genuine issue of material fact as to whether the reasons for the termination of Ms. Robinson's employment proffered by Sunroc are pretextual. See id.

"Under McDonnell Douglas, our role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." Johnson v. Weld County, Colo., 594 F.3d 1202, 1211 (10th Cir. 2010) (quotations omitted). To show that Sunroc's purported reasons for terminating Ms. Robinson's employment were a pretext to hide its discriminatory motives, Ms. Robinson points to evidence that some of the eight male laborers whose employment was terminated at the same time Ms. Robinson's employment was terminated actually wanted to return to Mexico for the winter. She also points to the earlier statement made by a supervisor that there would be winter work, which, if that work had panned out, would have

7

obviated the need for employment terminations. But even if a supervisor thought that there would be winter work and even if some of the male employees wanted to have their employment terminated so they could return to Mexico, that evidence is not enough for a rational trier of fact to find that Sunroc's proffered reasons for discharging Ms. Robinson are pretextual.

**No Bathrooms on New Job Site**

To recover for a Title VII claim of sex discrimination based on a hostile work environment, "a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." Pinkerton, 563 F.3d at 1058 (quoting Medina v. Income Support Div., 413 F.3d 1131, 1134 (10th Cir. 2005)).

It is undisputed that the decision not to have any onsite bathrooms was made to save money; that the decision was made before there were any female employees working on the site; that there were bathrooms available on other job sites nearby; and that in the year and a half Ms. Robinson worked for H.E. Davis/Sunroc, she was only without an onsite bathroom for six or seven days. Ms. Robinson argues that not having an onsite bathroom is more of a burden to a female construction worker than it is to a male construction worker. But Ms. Robinson cannot show, as she would need to at trial, that not having an onsite bathroom was the result of sexual discrimination or that not having an onsite bathroom for one week altered the terms or conditions of her employment and created an abusive working environment.

**Spring 2006 Harassment**

An employer may be held liable for harassment by employees (when they act without apparent authority and outside the scope of their employment), and by non-employees, only when

the employer is negligent, that is when the employer fails to remedy harassment that it knows or should know about. See Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1074 (10th Cir. 1998); Adler v. Wal-Mart Stores, 144 F.3d 664, 673 (10th Cir. 1998). "[T]he employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment." Holmes v. State of Utah, Dep't of Workforce Servs., 483 F.3d 1057, 1069 (10th Cir. 2007).

The "touchstone for evaluation of an employer's response . . . is reasonableness," which is whether the employer's action was "reasonably calculated to end the harassment." Adler, 144 F.3d at 676-77. "A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation." Id. at 676. The plaintiff bears the burden of bringing to the trial court's attention sufficient evidence to establish the essential element for employer liability: that the employer inadequately responded to incidents of harassment of which it knew or should have known. See id. at 677. And "[a] court may determine on summary judgment whether an employer's responses to claims of sexual harassment were reasonable as a matter of law." Holmes, 483 F.3d at 1069.

In this case, Ms. Robinson requested and was given a transfer to another job site soon after she complained about the harassment. After Ms. Robinson was transferred the harassment stopped. Sunroc also complained to Mr. Paladini's employer, which then suspended him. Although the reasonableness analysis may have been different had the harassing employees been

largely Sunroc employees, in this case Sunroc's response was reasonable as a matter of law.[2]

## TITLE VII RETALIATION CLAIM

Title VII contains an anti-retaliation provision that prohibits an employer from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII or because the employee has participated in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a); see Pinkerton v. Colo. Dep't. of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). Because Ms. Robinson seeks to prove her Title VII retaliation claim through indirect or circumstantial evidence, the court applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id.

"To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Id. (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)).

To a reasonable employee, a challenged action is materially adverse if the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotations omitted).

In her complaint, Ms. Robinson alleges that:

Sunroc engaged in retaliatory practices in violation of Section 704(a) of Title VII, including but not limited to intentionally creating a hostile work environment,

---

[2] Because the court disposes of this claim based on the absence of employer liability, it need not address the issue of the presence of a hostile work environment. See Adler, 144 F.3d at 673.

> alienating Ms. Robinson from her colleagues and criticizing her work
> performance. The retaliatory practices by Sunroc in Ms. Robinson's situation of
> employment were intolerable. As a result of the retaliation, Ms. Robinson
> suffered an adverse employment action; she was laid off or terminated from her
> employment at Sunroc.

(Compl. ¶¶ 47-48.) However, Ms. Robinson has provided no evidence to support her claim that Sunroc intentionally created a hostile work environment, or that Sunroc alienated Ms. Robinson from her colleagues or criticized her work performance.

In her opposition brief to Sunroc's motion for summary judgment, Ms. Robinson does not make any argument regarding her retaliation claim, although she admits in the fact section that her retaliation claim is based on the following: that she was not provided a bathroom at the job site she was tranferred to; that she was not given a proper roller to use at that job site; that she was moved from the job site where she was sexually harassed; that her employment was terminated; and that she was told she would not be offered employment during the EEOC mediation. The court will analyze each of these allegedly retaliatory actions in turn.

### No Bathrooms on New Job Site

Ms. Robinson admits that the unavailability of a bathroom while she was on the site to which she was transferred was "in no way related to [her]." (Mem. Opp'n Mot. Summ. J. ¶ 69.) Although she claims that the situation was a violation of OSHA regulations and that it affected her more than it the men at the site (id.), Ms. Robinson has provided no evidence of a causal connection between her sexual harrasment complaints and not having a bathroom on site, and in fact she admits that there is no such connection. Ms. Robinson has not established a prima facie case of retaliation related to the absence of an onsite bathroom.

11

### Steel-Drum Roller at New Job Site

Ms. Robinson alleges that when she was transferred, she was given the wrong roller to operate and that using it hurt her back. The only link between being given the wrong roller and her discrimination claim is the temporal proximity to her complaints. But Ms. Robinson's supervisor, Mr. Davis, told Ms. Robinson that Sunroc wanted to try the new roller before they bought it, and Ms. Robinson has no evidence that that explanation is pretextual. Further, Sunroc employee Mike Reeder assigned Ms. Robinson to use the roller, and Ms. Robinson does not think that Mr. Reeder was retaliating against her. (Mem. Opp'n Mot. Summ. J. ¶¶ 73-74.)

### Job Site Transfer

Because transferring Ms. Robinson, at her request, was a reasonable response to the situation (see above), as a matter of law the transfer was not retaliatory. Additionally, Ms. Robinson admits that she thought Sunroc supervisor Randy Diamond was trying to help her when he agreed to move her to another site. (Mem. Opp'n Mot. Summ. J. ¶ 63.)

### Employment Termination

Ms. Robinson first complained that she was being sexually harassed in April 2006. She was hospitalized with a kidney infection in May 2006. And she was laid off in December 2006. Ms. Robinson alleges that she told the supervisor who terminated her employment, Mr. Bradford, in September 2006 that she had filed a sexual harassment claim against Sunroc. (Id. ¶ 83.) According to Ms. Robinson, Mr. Bradford did not seem angry or upset; he told her: "If you have any problems like that come to me." (Id. ¶ 84.) Although Ms. Robinson suggests that Mr. Bradford laid her off in retaliation for her claim against Sunroc, Ms. Robinson has no evidence to that effect and the timing does not support a retaliation claim. As a result, Ms. Robinson has not

established a prima facie case of retaliation regarding her layoff.

Further, had Ms. Robinson established a prima facie case, she still could not rebut Sunroc's alleged legitimate, nondiscriminatory reason for terminating her employment: that work slowed during the winter as it had when Ms. Robinson's employment was terminated by Sunroc in December 2005. Ms. Robinson says that around a month before her employment was terminated, a manager said that Sunroc would have winter work, but Ms. Robinson does not know if there was actually enough winter work to make the layoff unnecessary.

In addition, although Sunroc ran an advertisement in the Salt Lake Tribune and the Deseret News advertising Ms. Robinson's same job, both Stan Davis (Sunroc supervisor of superintendents) and Mr. Bradford testified at their depositions that ads are usually run in advance, anticipating Sunroc's future staffing needs. According to Mr. Davis, "if it advertised the end of January, so it probably would have been the first of March before we was really hiring back." (Davis Dep. at 54:11-13 (attached as Ex. E to Mem. Further Supp. Mot. Summ. J.); see also Bradford Dep. at 65:9-66:7 (attached as Ex. 4 to Mem. Opp'n Mot. Summ. J.).)

And Sunroc offered to re-hire Ms. Robinson in March 2007. (Mem. Opp'n Mot. Summ. J. ¶ 26.) Without any proof of retaliatory motive or evidence of dishonesty, no rational trier of fact could find that Sunroc's proffered explanation for terminating Ms. Robinson's employment was pretextual.

### **EEOC Settlement Offer**

During an EEOC mediation, Sunroc offered a settlement proposal, which included as one of its terms that Ms. Robinson give up any claim to current or future employment at Sunroc. Although Ms. Robinson claims that this offer was retaliatory, it is axiomatic that an offer of

settlement is not a materially adverse action because, by definition, an offer of settlement is one that the employee can accept or reject. In this case, Ms. Robinson rejected Sunroc's offer and, shortly thereafter, she was offered re-employment by Sunroc.

### **FAMILY MEDICAL LEAVE ACT CLAIM**

Under the Family and Medical Leave Act (FMLA), an eligible employee with a serious health condition that makes the employee unable to perform her job functions is entitled to twelve weeks of unpaid leave each year. See 29 U.S.C. § 2612(a)(1)(D). Ms. Robinson alleges that, in violation of the FMLA, Sunroc did not designate Ms. Robinson's leave as FMLA leave and that Sunroc did not provide Ms. Robinson with an individualized notice of her FMLA rights. (Compl. ¶¶ 56-57.)

To be eligible for leave under the Family and Medical Leave Act, an employee must have been employed "for at least 12 months by the employer with respect to whom leave is requested . . . ." 29 U.S.C.A. § 2611(2)(A)(I); 29 U.S.C.A. § 2612. Ms. Robinson alleges that she did not get proper notice of her FMLA rights while she was ill in May 2006. But Ms. Robinson had worked for Sunroc for under eleven months in May 2006.[3] That Ms. Robinson may have become eligible for leave under the FMLA by the time her employment was terminated is irrelevant; it would be nonsensical to allow a plaintiff to retroactively support an FMLA claim because at some point after the alleged violation she became eligible for FMLA leave.[4]

Additionally, "[t]o determine whether damages and equitable relief are appropriate under

---

[3] Ms. Robinson was employed by H.E. Davis (another Clyde subsidiary) for seven months, from May 10, 2005, to December 9, 2005. She was re-hired by Sunroc on February 9, 2006. She took leave from May 9, 2006, to May 23, 2006, because of her kidney infection.

[4] Ms. Robinson cites no authority to support the court's consideration of post-violation eligibility.

the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different . . . ." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 91 (2002). In this case, Ms. Robinson admits that, when she was ill in May 2006, she took all of the time off work that she needed. (See Mem. Opp'n Mot. Summ. J. ¶ 100.) That Ms. Robinson was not an eligible employee under the FMLA at the time of the alleged violations and that there is no evidence that Ms. Robinson was prejudiced by Sunroc's actions are independent bases for the court to grant summary judgment in favor of Sunroc on Ms. Robinson's FMLA claim.

**EQUAL PAY ACT CLAIM**

The Equal Pay Act mandates that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work," except where the disparity is based on non-discriminatory considerations. 29 U.S.C. § 206(d)(1). Ms. Robinson alleges that despite having been trained on the job as an equipment operator, she was paid less than Sunroc's male equipment operators.

To maintain an Equal Pay Act claim, "the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work." Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006). Only after the plaintiff has established her prima facie case does the burden of persuasion shift to the defendant to prove that the wage disparity was justified under the act. Id.

Although Ms. Robinson suggests that male equipment operators who performed the same type of work as Ms. Robinson were paid more than she was paid, she has provided no evidence

to that effect.[5] Accordingly, Ms. Robinson has not made out a prima facie case of discrimination under the Equal Pay Act, and the court grants summary judgment to Sunroc on Ms. Robinson's Equal Pay Act claim.

**ORDER**

For the foregoing reasons, Sunroc's motion for summary judgment (Docket No. 56) is granted.

SO ORDERED this 24th day of May, 2010.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

---

[5] Ms. Robinson did not depose Sunroc's Human Resources Manager, whose uncontroverted testimony is that "[t]he average hourly wage rate for male laborers and labor/operators employed by Sunroc as of August 2006 (when Robinson filed her EEOC charge) was $11.63/hour," while Ms. Robinson was paid $12/hour. (Sapp Aff. ¶ 7, attached to Mem. Supp. Mot. Summ. J.)